UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NEO AVIATION SOLUTIONS FZC,

Plaintiff,

v. Case No. 8:26-cv-1610-VMC-LSG

AVI-TECHNOLOGIES, LLC,

Defendant.
_______________________________/

**ORDER**

This matter is before the Court on consideration of Defendant AVI-Technologies, LLC's Motion to Dismiss for Failure to State a Claim (Doc. # 17), filed on July 27, 2026. Plaintiff Neo Aviation Solutions FZC responded on August 17, 2026. (Doc. # 21). For the reasons that follow, the Motion is granted.

## I. Background

Plaintiff Neo Aviation Solutions FZC ("NEO") is a distributor of aircraft parts based in Dubai, United Arab Emirates. (Doc. # 1 at 2). For approximately two years, NEO has maintained a "business relationship" with Defendant AVI-Technologies, LLC ("AVIT"), a single-member limited liability company "engage[d] in the business of sourcing and supplying aviation and aircraft parts, and providing ground support

services for aircraft." (Id. at 1-2). Pursuant to this relationship, NEO agreed to "prepay funds to AVIT for the purchase and shipment of aircraft parts to Dubai, United Arab Emirates." (Id. at 2). Through this "course of dealing," the parties formed a contract. (Id. at 4).

"To date, AVIT has failed to deliver any of the prepaid parts," or "any portion of the approximately $1,187,729.00 USD prepaid by NEO." (Id. at 2-3). AVIT claims the parts "were not properly tagged for re-export, resulting in unexpected import duties and freight costs, of which AVIT is allocating the cost to NEO." (Id. at 3). But "AVIT has not provided clear documentation regarding the specific tariff and freight charges it alleges are due and owing, nor has AVIT provided clear documentation regarding how the remitted funds were expended." (Id.).

"On December 17, 2025, NEO sent a formal demand letter to AVIT, requiring AVIT to propose a resolution on or before January 2, 2026, either by returning the deposit or delivering the parts, with a warning that a failure to acknowledge receipt by December 19, 2025, would result in legal action." (Id.). Allegedly, AVIT not only failed to meet this deadline, but has also "engaged in evasive and dilatory conduct" regarding the matter. (Id.). As a result, NEO claims to be

without "any indication on the whereabouts and condition of the goods in question." (Id. at 4).

NEO initiated this action on May 29, 2026. (Id.). The complaint contains six causes of action: breach of contract (Count I), conversion (Count II), breach of the implied covenant of good faith and fair dealing (Count III), breach of express warranty (Count IV), breach of implied warranty (Count V), and, in the alternative, unjust enrichment (Count VI). (Id. at 4-13). Now, AVIT moves to dismiss Counts II though VI for failure to state a claim. (Doc. # 17). NEO has responded (Doc. # 21), and the Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Hum. Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

> the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004), abrogated on other grounds by Twombly, 550 U.S. 544.

## III. Analysis

In its Motion, AVIT argues that "[a]t its core, this case involves a contractual disagreement." (Doc. # 17 at 1-2). AVIT thereby objects to Counts II through VI on the basis that NEO has "improperly pleaded five additional causes of action" that "repackage contract disputes as tort, warranty, or quasi-contractual claims when those claims arise from the same operative facts, allege the same damages, and seek recovery for the same alleged breach." (Id. at 2). The Court will address each of these arguments in turn.

**A. Conversion**

First, AVIT moves to dismiss Count II, NEO's claim for conversion, maintaining that it is not adequately pled. (Id. at 3-4). Specifically, AVIT argues that the conversion claim fails because (1) it "fails to allege an independent wrong from the alleged failure to perform contractual obligations," and (2) it "fails to state a claim upon which relief may be granted." (Id.). The Court agrees as to the former.

"Under Florida law, conversion is an 'unauthorized act which deprives another of his property permanently'" or indefinitely. Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013) (quoting Fogade v. ENB Revocable Tr., 263 F.3d 1274, 1291 (11th Cir. 2001)). "Several courts, applying Florida law on conversion, have found a claim for conversion is actionable when a party takes money from another, as long as the money is sufficiently identifiable." Cutler v. Voya Fin., Inc., No. 18-cv-20723, 2018 WL 4410202, at *3 (S.D. Fla. Aug. 23, 2018) (citing Rosenthal Toyota, Inc. v. Thorpe, 824 F.2d 897, 902 (11th Cir. 1987)), report and recommendation adopted, No. 18-cv-20723, 2018 WL 7627867 (S.D. Fla. Oct. 26, 2018). However, the Eleventh Circuit has consistently recognized that "a conversion action is not an appropriate means of vindicating

a claim which essentially alleges breach of contract." Id. at *5 (quoting Misabec Mercantile, Inc. De Pan. v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc., 853 F.2d 834, 838 (11th Cir. 1988)).

"[I]t is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims" under Florida law. Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC, No. 8:20-cv-604-VMC-JSS, 2020 WL 5350303, at *5 (M.D. Fla. Sep. 4, 2020) (citation and internal quotation marks omitted). "As such, where there is a contractual relationship between the parties, the 'conversion must go beyond, and be independent from, a failure to comply with the terms of a contract.'" Toms v. State Farm Life Ins. Co., No. 8:21-cv-736-KKM-JSS, 2022 WL 2758212, at *3 (M.D. Fla. July 14, 2022) (quoting Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)); see also THI Med., S.A.C. v. Filmore Mgmt. Trading, LLC, No. 21-cv-21632, 2022 WL 2343334, at *8 (S.D. Fla. June 14, 2022) (recognizing embezzlement or refusal to return temporarily held funds as additional, affirmative acts falling within this limited exception), report and recommendation adopted, No. 21-cv-21632, 2022 WL 2341217 (S.D. Fla. June 29, 2022).

AVIT contends that NEO's "conversion claim is nothing more than a breach of contract claim" that "alleges a contract-governed payment dispute and seeks recovery of money and/or aircraft parts arising from the same alleged failure to perform the contract alleged under Count I." (Doc. # 17 at 5). As a result, "no further intentional wrong or separate loss is alleged." (Id. at 6). In response, NEO argues that its "breach of contract claim and conversion claim rest on two entirely distinct sets of facts and two entirely distinct duties." (Doc. # 21 at 10). The Court is not convinced.

"Whereas Florida law requires that a conversion claim between contractually related parties 'go beyond' and 'be independent of' the breach of contract claims," Toms, 2022 WL 2758212, at *3, NEO simply restates the same allegations concerning AVIT's non-delivery of the prepaid parts. (Doc. # 1 at 4-7). Specifically, NEO claims that, "[a]t all material times, a valid contract for consideration for goods and services existed between" itself and AVIT, which conferred upon NEO "a right of possession to the prepaid funds, and if acquired, the aircraft parts and components." (Id. at 4, 6). NEO "tendered payment to [AVIT] for the specific purpose of purchasing and shipping aviation parts to Dubai," yet since NEO sent payment, AVIT has continued to "exercise[] dominion

and control over both the aviation parts and [NEO]'s prepaid funds." (Id. at 7). "The purchase orders and course of dealing between the parties do not authorize [AVIT] to retain the parts and funds," yet AVIT "refus[es] to deliver the parts" as required by the parties' agreement. (Id.). This "breach has caused [NEO] to suffer damages" in excess of one million dollars. (Id. at 5, 7).

These allegations, even taken in the light most favorable to NEO, do not plausibly suggest that "the alleged conversion exists independently of an alleged failure to perform contractual duties." Toms, 2022 WL 2758212, at *3 (emphasis in original) (citation omitted); cf. Bankers Warranty Grp., Inc. v. Boom! Techs., Inc., No. 8:25-cv-731-CEH-SPF, 2026 WL 621448, at *4 (M.D. Fla. Mar. 5, 2026) (finding conversion claim was not barred as impermissibly duplicative of breach of contract claim where plaintiff alleged defendant "performed an affirmative and intentional act," akin to embezzlement, of "converting the funds for its own use"). Because "a conversion action is not an appropriate means of vindicating a claim which essentially alleges breach of contract," NEO's claim for conversion is due to be dismissed. Cutler, 2018 WL 4410202, at *5 (quoting Misabec Mercantile, 853 F.2d at 838).

The Motion is granted as to Count II, which is dismissed without prejudice.

**B. Implied Covenant of Good Faith and Fair Dealing**

Next, AVIT moves to dismiss Count III, NEO's claim for breach of the implied covenant of good faith and fair dealing. (Doc. # 17 at 11). AVIT argues that dismissal is proper because "(1) such claim is not tied to a specific express term of a contract granting [AVIT] discretion in performance, and (2) it is duplicative of the breach of contract claim." (Id.). The Court agrees.

"Florida courts recognize an implied covenant of good faith and fair dealing in every contract." Shibata v. Lim, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) (citations omitted); see also Sepe v. City of Safety Harbor, 761 So. 2d 1182, 1184 (Fla. 2d DCA 2000) (observing that the implied covenant of good faith and fair dealing exists in agreements governed by the Florida Uniform Commercial Code). However, "[t]he duty of good faith must 'relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements.'" ACG S. Ins. Agency, LLC v. Safeco Ins. Co., No. 8:19-cv-528-CEH-AAS, 2019 WL

8273657, at *8 (M.D. Fla. Dec. 16, 2019) (quoting Resnick v. AvMed, Inc., 693 F.3d 1317, 1329 (11th Cir. 2012)).

"[T]o state a claim for breach of the implied covenant of good faith and fair dealing, plaintiffs must identify the specific contract term(s) giving rise to the implied duty of good faith and also allege how defendants breach[ed] their implied duty, alleging facts different from those giving rise to the breach of contract claim." Lawrence v. FPA Villa Del Lago, LLC, No. 8:20-cv-1517-VMC-JSS, 2021 WL 2144758, at *4 (M.D. Fla. Mar. 4, 2021) (citation omitted); see also Shibata, 133 F. Supp. 2d at 1319 ("[A] breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract.").

While Count III alleges that AVIT acted in bad faith, it fails to identify an express provision of the contract that could give rise to an implied duty of good faith and fair dealing. Rather, NEO broadly recites the conduct allegedly supporting its claim for breach of contract. (Doc. # 1 at 8) ("Defendant's actions deprived Plaintiff of the essential benefits of the parties' agreements, including the shipment and delivery of the aircraft parts to Dubai."). Count III does not identify any specific contractual terms. (Id. at 8–

9). Accordingly, it must be dismissed. See Lawrence, 2021 WL 2144758, at *5 ("Because a claim for the implied covenant of good faith and fair dealing must be associated with an express term of a contract, the Motion is granted as to Count III, which is dismissed without prejudice."). The Motion is granted as to Count III.

### C. Breach of Express Warranty

"To state a claim for breach of an express warranty under the Florida Uniform Commercial Code, a complaint must allege: (1) the sale of goods; (2) an express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." Dawson v. Generac Power Sys., Inc., 820 F. Supp. 3d 1306, 1326 (M.D. Fla. 2025) (footnotes omitted) (citing Dunham-Bush, Inc. v. Thermo-Air Serv., Inc., 351 So. 2d 351, 353 (Fla. 4th DCA 1977)), reconsideration denied, No. 8:24-cv-2412-KKM-LSG, 2026 WL 1277950 (M.D. Fla. May 11, 2026).

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Fla. Stat. § 672.313(1)(a). Likewise, any "description of the goods," or

"sample or model," "which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description," or "that the whole of the goods shall conform to the sample or model." Id. § 672.313(1)(b)-(c). "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that the seller have a specific intention to make a warranty." Id. § 672.313(2).

Here, AVIT argues that the complaint fails to plausibly state a claim for breach of an express warranty because it "seeks to impermissibly apply a UCC express warranty to what has been alleged to be a service contract." (Doc. # 17 at 18). But NEO maintains that the complaint alleges a transaction principally concerned with the sale of goods. (Doc. # 21 at 17-18). While AVIT is correct that the Florida Uniform Commercial Code "does not apply to contracts for services," Allied Shelving & Equip., Inc. v. Nat'l Deli, LLC, 154 So. 3d 482, 483 (Fla. 3d DCA 2015), this fact alone does not supply a basis for dismissing NEO's claim.

The complaint acknowledges that the contract between NEO and AVIT involved "consideration for goods and services." (Doc. # 1 at 9). Where a contract concerns both goods and services, "[m]ost courts follow the 'predominant factor' test

to determine whether such hybrid contracts are transactions in goods, and therefore covered by the UCC, or transactions in services, and therefore excluded.” BMC Indus., Inc. v. Barth Indus., Inc., 160 F.3d 1322, 1329 (11th Cir. 1998); see also Medmoun v. Home Depot U.S.A., Inc., No. 8:21-cv-1585-KKM-CPT, 2022 WL 1443919, at *9 (M.D. Fla. May 7, 2022) (“Where a contract is for both goods and services, the governing law is determined by ‘thrust’ or ‘purpose’ of the contract.” (citation omitted)). “At least one Florida court has implicitly adopted [this] test.” BMC Indus., 160 F.3d at 1330 (citing U.S. Fid. & Guar. Co. v. N. Am. Steel Corp., 335 So. 2d 18, 21 (Fla. 2d DCA 1976)).

NEO claims that AVIT “expressly represented and warranted, through communications, invoices, purchase orders, agreements, and through the course of dealing, that [AVIT] would receive, process, and ship NEO’s aircraft parts and components to Dubai, [AVIT] would perform the agreed logistics and export-related services in accordance with the parties’ agreements, and [AVIT] would provide the contracted services upon receipt of payment.” (Doc. # 1 at 9–10). Even to the extent NEO and AVIT contracted for the performance of services, however, the complaint alleges any such services were to be undertaken pursuant to an agreement for the

"purchase and shipment of aircraft parts." (Id. at 2). When favoring NEO with all reasonable inferences, the thrust of parties' agreement was therefore a transaction in goods, to which the Florida Uniform Commercial Code applies. Medmoun, 2022 WL 1443919, at *9.

Nevertheless, NEO fails to allege a breach of any express warranty as defined therein. AVIT argues NEO "does not allege that [AVIT] made any affirmation about the characteristics, quality, or condition of the aircraft parts themselves." (Doc. # 17 at 18-19). As such, "[t]he only alleged 'express warranties', as alleged in the Complaint, are promises to perform the exact services that form the basis of the contract claim," namely AVIT's "promise to perform shipping and logistics services." (Id. at 19-20). The Court agrees.

Nowhere in Count IV, nor in the nineteen paragraphs of the body of the complaint incorporated by reference in Count IV (Doc. # 1 at 1-4, 9-10), does NEO identify "[a]ny description of the goods," or "[a]ny sample or model," to which the prepaid parts did not conform. Fla. Stat. § 672.313(1)(b)-(c). NEO likewise fails to plausibly allege "[a]ny affirmation of fact or promise" made by AVIT "relat[ing] to the goods" that created an express warranty that the prepaid parts would "conform to the affirmation or

promise." Id. § 672.313(1)(a). Rather, NEO restates the same allegations that AVIT "failed to ship the aircraft parts," and thereafter "refused to return the aircraft parts or refund [NEO]'s money." (Doc. # 1 at 9-10).

Because NEO does not identify any express warranty, as defined by Florida law, that AVIT breached, the complaint does not plausibly state a claim for breach of an express warranty. Accordingly, the Motion is granted as to Count IV, which is dismissed without prejudice.

**D. Breach of Implied Warranty**

Under the Florida Uniform Commercial Code, "there are two distinct implied warranties: an implied warranty of merchantability and an implied warranty of fitness for a particular purpose." Armadillo Distrib. Enters., Inc. v. Hai Yun Musical Instruments Manufacture Co., 142 F. Supp. 3d 1245, 1254 (M.D. Fla. 2015) (citing Ryan v. Atl. Fertilizer & Chem. Co., 515 So. 2d 324, 326 (Fla. 3d DCA 1987)). A warranty of merchantability is implied in any contract for the sale of goods where "the seller is a merchant with respect to goods of that kind." Fla. Stat. § 672.314(1). A good is considered merchantable if, among other requirements, it is "fit for the ordinary purposes for which such goods are used" and can "[p]ass without objection in the trade under the contract

description." Id. § 672.314(2). By contrast, an implied warranty of fitness for a particular purpose arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Id. § 672.315.

"In order to properly plead a cause of action for breach of warranty under the Florida Uniform Commercial Code, a complaint should contain at least the following allegations: (1) the sale of goods; (2) the warranty under which relief is sought; (3) how the warranty arose; (4) the breach of the warranty; (5) notice to the seller of the breach; (6) and the injury sustained by the buyer." E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv., Inc., No. 8:10-cv-1870-JDW-AEP, 2011 WL 4343790, at *7 (M.D. Fla. Aug. 10, 2011) (citing Dunham-Bush, 351 So. 2d at 353), report and recommendation adopted, No. 8:10-cv-1870-JDW-AEP, 2011 WL 3841631 (M.D. Fla. Aug. 30, 2011). Where the plaintiff does not plausibly allege "any facts with respect to the type and terms of the warranty under which it is seeking relief (i.e. express warranty, implied warranty of fitness, etc.), or any facts giving rise to the creation of the warranty," a breach of warranty claim should be dismissed. Id.

Here, the complaint is unclear as to which implied warranty AVIT allegedly breached. NEO broadly claims AVIT "impliedly warranted that it would perform its obligations in a commercially reasonable manner consistent with industry standards and the parties' reasonable expectations." (Doc. # 1 at 11). Allegedly AVIT "knew the intended purpose of the transaction," and knew that NEO "relied upon" AVIT's "expertise, logistics capabilities, and performance" (Id.), which sounds in the register of the implied warranty of fitness for a particular purpose. Yet NEO cites only the statutory provision establishing the implied warranty of merchantability. (Id.). NEO's allegations as to breach provide no further clarity. See (Id.) ("Defendant breached these implied warranties by failing to timely ship the aircraft parts, retaining possession of the aircraft parts after accepting payment, refusing to return the aircraft parts, refusing to refund [NEO]'s monies, improperly attempting to impose additional charges not contemplated by the parties' agreements, and failing to conduct the transaction in a commercially reasonable manner.").

Even when favoring NEO with all reasonable inferences, Count V does not plead facts sufficient to plausibly suggest that a defect in the prepaid parts rendered them

unmerchantable, Fla. Stat. § 672.314(2), or that such prepaid parts were unfit for a particular purpose of which AVIT had reason to be aware, Id. § 672.315. NEO merely restates that AVIT allegedly breached the parties' agreement by failing to perform its duties to "timely ship the aircraft parts" altogether. (Doc. # 1 at 11).

Because NEO fails to adequately identify the "type" of "warranty under which relief is sought," or the conduct by which AVIT breached such warranties, its claim for breach of implied warranty is due to be dismissed. E-Z Pack Mfg., 2011 WL 4343790, at *7; see also 14250 Realty Assocs., Ltd. v. Weddle Bros. Const. Co., No. 8:07-cv-788-JDW-EAJ, 2008 WL 4853635, at *4 (M.D. Fla. Nov. 6, 2008) (dismissing claim for breach of warranty because plaintiff "fails to identify the origin of this warranty, fails to identify the terms of the warranty, and fails to describe how it was breached").

The Motion is granted as to Count V, which is dismissed without prejudice.

**E. Unjust Enrichment**

Finally, AVIT moves to dismiss Count VI, NEO's claim for unjust enrichment. (Doc. # 17 at 21-24). AVIT argues that Count VI is "fatally deficient" because (1) it contains "allegations of an express agreement governing the alleged

benefits conferred" which are "inconsistent with a quasi-contractual cause of action," and (2) it "does not allege that the parties dispute the existence or assert[] the invalidity of the contract governing the dispute." (Id. at 23). The Court agrees as to the latter.

"No cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract." Zarrella v. Pac. Life Ins. Co., 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010). "This is because 'the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy.'" Id. (quoting Webster v. Royal Caribbean Cruises, Ltd., 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000)). "A party may plead in the alternative for relief under an express contract and for unjust enrichment but only when one of the parties asserts that the contract governing the dispute is invalid." ATA-CIF, LLC v. IECUBED, LLC, No. 8:11-cv-603-VMC-EAJ, 2011 WL 6217508, at *2 (M.D. Fla. Dec. 14, 2011) (citation and internal quotation marks omitted); see also Zarrella, 755 F. Supp. 2d at 1227 (recognizing that, while alternative pleading is generally permitted, one or more parties must "dispute the existence of an express contract" for an unjust

enrichment claim pled in the alternative to survive dismissal).

Here, AVIT states it "has not sought dismissal of the Breach of Contract count and has argued in this Motion that the parties' disagreement is controlled by contract law and not tort or quasi-contract claims." (Doc. # 17 at 23). NEO does not allege in Count VI, nor in the nineteen paragraphs of the body of the complaint incorporated by reference in Count VI, any facts to the contrary. (Doc. # 1 at 1-4, 12-13). Likewise, NEO does not itself dispute the validity of the parties' contractual agreement. (Id.). Count VI is thereby dismissed without prejudice. See ATA-CIF, 2011 WL 6217508, at *2 ("Here, the parties do not dispute the existence of an express contract governing their transaction and, accordingly, the equitable remedy of unjust enrichment is not available."). The Motion is granted as to Count VI.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant AVI-Technologies, LLC's Motion to Dismiss for Failure to State a Claim (Doc. # 17) is **GRANTED.**

(2) Counts II through VI of Plaintiff Neo Aviation Solutions FZC's Complaint (Doc. # 1) are **DISMISSED WITHOUT PREJUDICE.**

(3) If NEO wishes to amend, it must file its amended complaint within 14 days of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 26th day of October, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE